[L. A. No. 22931. In Bank. Apr. 15, 1955.]

ELLA C. BABBITT, Respondent, v. DOUGLAS B. BABBITT et al., Defendants; AGNES M. McGOWAN, Appellant.

290

Benjamin D. Brown and A. James Ayers for Appellant.

Ernest Best for Respondent.

SHENK J.—This is an appeal by the defendant from a judgment in which the plaintiff was granted an interlocutory decree of divorce and awarded a parcel of community real property. Her title to that property was quieted as against a third party who was joined as a defendant in the action.

Douglas and Ella Babbitt were husband and wife. In 1949, Douglas, while still married to Ella, commenced to live with Agnes McGowan, also known as Agnes Hansen. While Douglas and Agnes lived together, Agnes contributed from her earnings toward their common livelihood. During 1949 a parcel of improved real property in Los Angeles County was purchased. Title was taken in the name of Agnes McGowan. Both lived on the property. In September of 1951 Agnes brought an action of ejectment against Douglas, claiming full title to the property. Douglas filed a cross-complaint in which he claimed to be the owner of the property and alleged that Agnes was holding it in trust for him. While the ejectment action was pending in the superior court Douglas and Agnes, as parties thereto, stipulated that a judgment be entered by which each party should take a one-half interest in the property and Agnes be awarded a $500 lien against the property. The plaintiff, Ella Babbitt, was not a party to the ejectment action.

The plaintiff commenced this action for divorce against Douglas alleging adultery and cruelty. She joined Agnes as a party defendant alleging that Agnes held the half interest in the real property in trust for the community. The prayer of the plaintiff's complaint sought a divorce, support, all of the community property, and a decree that Agnes "holds said real property as trustee, to be distributed as community property of the married parties; and such other relief as to the court may seem just."

Douglas defaulted in the divorce action although he appeared as a witness at the trial. Agnes answered and denied that she held the interest in the real property in trust for the community. The court found the allegations of the complaint as against Douglas to be true and ordered the interlocutory decree of divorce. The court found that although Agnes contributed her earnings to the livelihood of herself and Douglas, the moneys used to purchase the real property were community funds; that title to the property was taken in Agnes' name to prevent the plaintiff from discovering the transaction; that the plaintiff was not bound by the stipulated judgment in the ejectment action; that Agnes has no right, title or interest in the property, and that it be awarded to the plaintiff along with the remainder of the community property. Judgment was entered accordingly.

Agnes first contends that the evidence is insufficient

to support the finding that the property was entirely community property. Evidence was introduced upon this subject. Agnes testified that some of her money went into the purchase of the property, and Douglas testified that Agnes made no payments whatsoever from her money on the purchase price of the property and that the entire purchase money came from his earnings. There is substantial evidence to sustain the trial court's finding "That the entire purchase price of said real property was furnished by defendant Douglas B. Babbitt from the community funds and earnings of himself and plaintiff, and that no part thereof was furnished by defendant Agnes M. Hansen."

In addition the court found, and there is substantial evidence to support the finding, "That the two defendants, while living together in open and notorious adultery, conceived the idea and purpose of using said community earnings to purchase an improved parcel or real property and to have title thereto taken in the name of Agnes M. Hansen, the then name of defendant Agnes M. McGowan, for the sole purpose of cheating, deceiving and defrauding the plaintiff; and that pursuant to said design and purpose, and upon the oral promise of the said Agnes M. Hansen to convey legal title to the improved real property to defendant Douglas B. Babbitt, upon his demand . . . Douglas . . . purchased [the] Lot. . . ."

It is contended by Agnes that the judgment in the ejectment action is binding on the plaintiff on the theory that the husband has the management and control of the community property (Civ. Code, §§ 172, 172a) and that the judgment in that action was the result of a bona fide compromise between herself and Douglas concerning their respective rights to the property involved.

The plaintiff, as stated, was not a party to the ejectment suit. The judgment in that action was brought into this case by Agnes as defensive matter. It was proper for the plaintiff in the present action to attack that judgment on any and all legal grounds. (*Feig* v. *Bank of Italy*, 218 Cal. 54, 57 [21 P.2d 421]; *Manuel* v. *Kiser*, 94 Cal.App.2d 540, 546 [210 P.2d 918]; *Stevens* v. *Kelley*, 57 Cal.App.2d 318 [134 P.2d 56].) She interposed the objection that it was not binding on her because of the fraud of Agnes and Douglas and the trial court so found and concluded. This conclusion was justified under the evidence on the theory that the stipulated judgment in the ejectment action could not be disentangled from the fraudulent relationship of the

parties thereto, and that it was but another step in the conspiracy between Douglas and Agnes to deprive the plaintiff of her property rights. It was properly held that such an agreed judgment was in effect merely a compromise among wrongdoers in a controversy between themselves as to a division of the spoils. On no principle of right or justice should that judgment be deemed binding on the plaintiff.

█ It is the general rule that a judgment obtained in fraud of the interests of a third-person is not binding upon him (Rest., Judgments, § 91, § 115, comment (d); see *Campbell-Kawannanakoa* v. *Campbell*, 152 Cal. 201 [92 P. 184]; *Anderson* v. *Bank of Lassen County*, 140 Cal. 695 [74 P. 287]; *Harada* v. *Fitzpatrick*, 33 Cal.App.2d 453 [91 P.2d 941].) █ The fraud was abundantly established. Douglas testified: ''. . . if I bought the property in my name, I was afraid that my wife would take it away from me perhaps through the court at a later date and that is why I bought it in her [Agnes'] name.'' The evidence also shows that at all times here involved Agnes knew that Douglas was married to the plaintiff and of the community character of the property. It thus appears that the ejectment action was but a continuation of the fraudulent scheme employed by Agnes and Douglas in their endeavor to defeat the rights of the plaintiff to the property.

Agnes may not prevail on the theory of gift. The record refute any such claim. █ Moreover, a wife during the existence of the marriage may set aside a gift of community property by the husband to a third party without her consent. (*Odone* v. *Marzocchi*, 34 Cal.2d 431, 438 [211 P.2d 297, 212 P.2d 233, 17 A.L.R.2d 1109]; *Britton* v. *Hammell*, 4 Cal.2d 690, 692 [52 P.2d 221].)

█ Agnes further contends that the judgment, insofar as it quieted title to the property in the plaintiff, exceeded the prayer and gave relief upon a theory different from that presented by the pleadings. The plaintiff prayed for general relief and the facts upon which relief was based were alleged in the complaint. The action was contested. In such a case the prayer does not limit the relief which may be granted provided such relief is ''consistent with the case made by the complaint and embraced within the issue.'' (Code Civ. Proc. § 580; see *Woods C. I. Ditch Co.* v. *Porter S. Ditch Co.*, 173 Cal. 149, 153 [159 P. 427]; *Johnson* v. *Polhemus*, 99 Cal. 240, 244 [33 P. 908].) The result in this case is within that rule.

Finally, Agnes complains that the trial court failed to recognize a $500 lien against the property awarded her in the ejectment action. As previously pointed out, that judgment is not binding upon the plaintiff. However, at the trial the plaintiff's attorney stipulated that Agnes provided the money from her own funds for the purchase of an icebox and a stove, which were left in the house and that the purpose of the $500 lien was to secure to her a reimbursement for that expenditure.

It is the rule generally that gas stoves or ranges when installed in a dwelling are not fixtures and that electrical appliances such as refrigerators and stoves are personal property and do not become a part of the realty where, as here, they are movable and can be disconnected by pulling a plug or unscrewing a gas connection. (*Daniger* v. *Hunter*, 114 Cal.App.2d 796, 798 [251 P.2d 353].) There seems to be nothing in the law of this state which would confer upon Agnes a lien upon the real property merely because personal property belonging to her is upon it. The right to the personal property which she claims was not asserted by any of the pleadings. It was therefore not an issue in the case and the trial court properly refrained from deciding that question.

The judgment is affirmed.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. The record supports the finding that Douglas and Agnes conspired in the original purchase of the property in question and in the taking of title to it in the name of Agnes in order to defeat a possible claim of plaintiff to a community interest but it does not establish a ground for setting aside or avoiding the effect of the judgment in the ejectment action. To the contrary, the record establishes that Douglas and Agnes had come to a parting of the ways and were asserting directly conflicting claims to the property at the time the ejectment action was filed.

The parties to that action were Agnes as plaintiff and Douglas as defendant and cross-complainant. The property he was claiming adversely to Agnes was the property here at issue and, if it be community property at all, he necessarily, or at least prima facie on the record as it is presented to us, was representing the community in that action. On the record as it now exists, the plaintiff wife here was in privity with her husband there and is bound by that judg-

ment. (*Cutting* v. *Bryan* (1929), 206 Cal. 254, 258 [274 P. 326]; *Yearout* v. *American Pipe & Steel Corp.* (1946), 74 Cal.App.2d 139, 142-144 [168 P.2d 174]; *Secondo* v. *Superior Court* (1930), 105 Cal.App. 179, 182 [286 P. 1089]; see also Rest., Judgments, § 85, p. 409.)

It is a general rule that a party to a case, or a privy to a party, may, after a judgment has become final, attack it only directly and only upon a showing of extrinsic fraud in procuring it. (*Campbell-Kawannanakoa* v. *Campbell* (1907), 152 Cal. 201, 208-210 [92 P. 184]; *Anderson* v. *Bank of Lassen County* (1903), 140 Cal. 695, 698 [74 P. 287]; *Harada* v. *Fitzpatrick* (1939), 33 Cal.App.2d 453, 459 [91 P.2d 941]. See also 15 Cal.Jur., Judgments, § 123, p. 15 et seq., and § 139, p. 47, and cases there cited; *Neblett* v. *Pacific Mutual L. Ins. Co.* (1943), 22 Cal.2d 393, 397 [139 P.2d 934]; *Caldwell* v. *Taylor* (1933), 218 Cal. 471, 475-476, 479-480 [23 P.2d 758, 88 A.L.R. 1194]; *McGuinness* v. *Superior Court* (1925), 196 Cal. 222, 227-230 [237 P. 42, 40 A.L.R. 1110]; *Associated Oil Co.* v. *Mullin* (1930), 110 Cal.App. 385, 389-390 [294 P. 421]; *Feig* v. *Bank of Italy* (1933), 218 Cal. 54, 56-57 [21 P.2d 421].)

There is no suggestion that the judgment in the ejectment action is void on its face and there is no finding of extrinsic fraud in its procurement. In this state of the record the majority opinion, to support its holding that the ejectment judgment is not binding on the plantiff, declares its own conclusion that "It thus appears that the ejectment action was but a continuation of the fraudulent scheme employed by Agnes and Douglas in their endeavor to defeat the rights of the plaintiff to the property." But there was no finding to such effect. Instead, the court found as follows:

"6

"That subsequent to the taking of legal title to said real property in the name of Agnes M. Hansen, and about the time that the final payment was made on the purchase price thereof, the two defendants herein separated from each other; the defendant Douglas B. Babbitt demanded of Agnes M. Hansen legal title to said real property, which conveyance was refused; and the defendant Agnes M. Hansen claimed said real property to be her own.

"7

"That on or about September 11, 1951, in the Compton branch of this Court, the said Agnes M. Hansen commenced

an action against the said Douglas B. Babbitt, having for its object and purpose to eject the said Douglas B. Babbitt from said real property; that the said Douglas B. Babbitt contested said action and filed his cross complaint therein claiming legal title to said real property by reason of his aforesaid payments of money and trust agreement and on to wit June 4th, 1952, in said proceeding number COC 313, files [sic] in said Branch Court, a stipulated judgment was entered into, upon the consent of said parties, giving each of said parties an undivided one-half interest in and to said real property, and adjudging that the same be sold and the net proceeds be divided between them according to the tenor of said judgment.''

It appears to me that the above quoted findings not only fail to determine that the ejectment judgment was a product of continuing collusion, obtained in fraud of the rights of the plaintiff here, but, to the contrary, conclusively establish (so far as this appeal is concerned) that the earlier action was a bona fide adversary litigation in which plaintiff's husband (her privy) ''contested said action and . . . [obtained for himself and plaintiff as against the adverse claim of Agnes] an undivided one-half interest in and to said real property.''

Whether Douglas (plaintiff's husband) did or did not make a wise compromise of the conflicting claims of Agnes and himself is beside the point. The fact as found is that Douglas ''demanded of Agnes M. Hansen legal title to said real property, which conveyance was refused; and the defendant Agnes M. Hansen claimed said real property to be her own.'' These findings negative collusion.

At no point in either the pleadings or the court's findings and conclusions is it stated or suggested that the judgment in the ejectment action was procured in any wise other than as a bona fide compromise and settlement of an actual and active dispute between defendants (husband and Agnes) as to their respective rights in the property. Nor does the judgment roll in the ejectment action suggest or reveal fraud of any nature. Agnes' complaint in that action alleges that she owns the property in fee and is entitled to possession of it; the husband's answer denies her ownership and his cross-complaint alleges that he ''agreed to purchase'' the property and put it in her name, in reliance upon her statements that she would reconvey to him upon his request; that he paid for the property but she intended to defraud him of it.

Agnes' answer to the cross-complaint alleges that part of the purchase price was paid from her earnings and separate property and that an accounting would be needed to determine the respective interests of the parties in the property, and that title had been taken in her name to prevent the wife from learning of the husband's interest in the property and from asserting any interest therein. The judgment in the ejectment action recites that the parties had "stipulated in open court that the court may make the judgment and decree set forth hereafter"; it is then adjudged that the parties each own an undivided one-half interest in the property, that the husband's one-half interest therein is vested in him by virtue of the decree, that Agnes has "an equitable charge and lien against" the property in the sum of $500 and the husband has a similar "charge and lien" in the sum of $850.

The fact that originally Douglas paid for the property and had it placed in Agnes' name for the purpose of defeating the plaintiff's claims is only indirectly relevant to the controlling issue. That issue is not how was the property originally obtained but, rather, how was the judgment obtained. Unless the judgment was collusively obtained in fraud of plaintiff's rights it is conclusive as between her and Agnes as well as between Douglas and Agnes.

Without going into further detail here, I submit that it is plain from the record that the trial court in the present (divorce) suit did not find fraud in the procurement of the ejectment action judgment and that the court's conclusion that such judgment is not res judicata or binding as to plaintiff is utterly without support. (See e.g., *Cutting* v. *Bryan* (1929), *supra*, 206 Cal. 254, 258; *Yearout* v. *American Pipe & Steel Corp.* (1946), *supra*, 74 Cal.App.2d 139, 142-144; *Secondo* v. *Superior Court* (1930), *supra*, 105 Cal.App. 179, 182; see also Rest., Judgments, § 85, p. 409.)

If in truth there was collusion between Douglas and Agnes in the procurement of the judgment in the ejectment action, then plaintiff, as a person in privity with her husband in that action but claiming by reason of the fraud to be not bound by it could (either in a direct action brought for the purpose, or, probably, upon proper proof and sufficient findings here) establish the fact of actual fraudulent collusion in the obtaining of the judgment and so avoid the prima facie and otherwise conclusive bar of that judgment. (See 15 Cal.Jur., Judgments, § 139, p. 47, and cases there

cited; *Caldwell* v. *Taylor* (1933), *supra,* 218 Cal. 471, 475; *Associated Oil Co.* v. *Mullin* (1930), *supra,* 110 Cal.App. 385, 389-390; Rest., Judgments, § 115, p. 556, and § 122, p. 594.) It is declared at page 556 of Restatement of Judgments that "Where an action is brought by or against a fiduciary for the benefit of another, and a judgment is rendered therein, the beneficiary is bound by the rules of res judicata . . . Hence the beneficiary is entitled to equitable relief under the same circumstances as if he were a party to the judgment. He may be entitled to equitable relief even though the fiduciary is not so entitled, as where the judgment is the result of collusion between the other party and the representative . . ." It would appear that this latter exception to the general rule would be applicable to plaintiff-wife here, *if* she proves and the court finds facts in support of such theory.

For the reasons above stated, there is shown in the record now before us no tenable basis for sustaining the holding of the trial court that the entire property is community and awarding it to plaintiff. The portion of the judgment so decreeing, insofar as it is in derogation of the earlier judgment, should be reversed and the judgment modified or the cause remanded for a new trial on the res judicata issue.

Carter, J., concurred.